Joshua Offenhartz, Esq. Bar No. 032494
Kiri T. Semerdjian, Bar No. 033775
**Koeller, Nebeker, Carlson & Haluck, LLP**
3800 N. Central Ave., 15th Floor
Phoenix, Arizona 85012
Phone: (602) 256-0000
Fax: (602) 256-2488
josh.offenhartz@knchlaw.com
kiri.semerdjian@knchlaw.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MOLINA INC., an Arizona corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MIMI ET CIE, LLC dba MIMI ET CIE JEWELRY, a California limited liability company; LA GEMS PRIVATE JEWELERS INC., a California Corporation; MESHELL SOHL A/K/A MIMI SOHL, aka MESHELL "MIMI" SOHL-HOLDO and NELSON HOLDO, a married couple; JOHN DOES and JANE DOES I-V, husbands and wives; BLACK PARTNERSHIPS I-V; and WHITE CORPORATIONS I-V,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**Jury Demand Requested** |

Plaintiff, Molina, Inc. ("Molina"), for its Complaint against Defendants Mimi et Cie, LLC dba Mimi et Cie Jewlery ("Mimi et Cie"), Meshell Sohl a/k/a Mimi Sohl a/k/a Meshell "Mimi" Sohl-Holdo (Mrs. Sohl-Holdo") and Nelson Holdo ("Mr. Holdo") (collectively, "Defendants") alleges as follows:

1

## JURISDICTION AND VENUE

1.     This Court has jurisdiction under 28 U.S.C. § 1332 based on diversity of citizenship between Plaintiff and Defendants, and because the amount in controversy exceeds $75,000. This Court has supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367, and under principles of pendent jurisdiction.

2.     Venue is proper in this District under 28 U.S. Code § 1391(b)(2).

## THE PARTIES

3.     Plaintiff Molina, Inc. is an Arizona corporation with its principal place of business at 3134 East Camelback Road, Phoenix, Arizona 85016.

4.     Mimi et Cie, LLC is a California limited liability Company with its principal place of business at 696 E Colorado Blvd #7, Pasadena, CA 91101.

5.     LA Gems – Private Jewelers Inc. is a California Corporation with its principal place of business at 1024 Bayside Dr. #125 Newport Beach, CA 92660.

6.     Upon information and belief, Mrs. Sohl-Holdo and Mr. Holdo are a married couple, residing in Pasadena, California.

7.     Upon information and belief, Mrs. Sohl-Holdo and Mr. Holdo are the sole principals and owners of Mimi et Cie.

## FACTS COMMON TO ALL CLAIMS

8.     On or around April 27, 2022, Mr. Holdo, on behalf of Mimi et Cie, entered into a consignment agreement (the "Consignment Agreement") with Molina, for the consignment of six (6) luxury, collectible eggs, including: 1) Faberge Museum Egg Collection, 2) Neuschwanstein Castle Egg, 3) Cathedral Egg; 4) Chicken Egg; 5) Elephant Egg; and, 6) Piano Egg. (Collectively, the "Eggs"). A true and correct copy of the Consignment Agreement is attached hereto as **Exhibit A.**

9.     At all relevant times Mr. Holder was the Sole Director, Chief Executive Officer, Chief Financial Officer, and Secretary of LA Gems – Private Jewelers Inc.

10.     The Eggs were valued at $175,000.00 pursuant to the Consignment Agreement. *Id.*

2

11. Pursuant to the Consignment Agreement, the Eggs were to be delivered to Defendants for examination and inspection by prospective purchasers. *Id.*

12. The Eggs were to remain the property of Molina and were to be immediately returned to Molina upon its demand and at Defendants' expense.

13. On April 27, 2022, Molina shipped the Eggs to Defendants at Mimi et Cie's address via Brinks armored security, provided by Mr. Holdo, with Airway Bill # 1101-4680631.

14. Pursuant to the Consignment Agreement, and in order to finalize the transaction, Molina attempted to receive proof of delivery from Brinks, but were not provided with any such proof as Defendants had not authorized Molina on the account.

15. To date and despite demand, no such proof of delivery has been received and the transaction has never been finalized.

16. Additionally, as part of the Consignment Agreement, Defendants agreed to ensure the Eggs, but to date, no proof of any such insurance has been received by Molina.

17. Pursuant to the Consignment Agreement, Defendants cannot sell, pledge, hypothecate or otherwise dispose of the Eggs, unless by sale to a *bona fida* purchaser, for a price not less than the stated value or such higher value as Molina shall require based on the current market value of the Eggs and at Molina's discretion, as the owner of the Eggs.

18. Upon sale to a *bona fida* purchaser, for a price approved by Molina, Defendants are to hold those funds in trust for Molina and to provide a prompt accounting of same to Molina, and such price shall be received and held by Defendants as a trustee for Molina, with a prompt account of funds to Molina.

19. To date, Molina is unaware of and certainly did not approve of any purchase of the Eggs.

20. Because Defendants have failed to comply with the terms of the Consignment Agreement, Molina has made repeat demand for either: 1) immediate return of the Eggs pursuant to the terms and methods set forth in the Consignment Agreement or 2) payment in

the amount of the stated value of $175,000.00, which does not necessarily even account for the actual market value of the Eggs.

21.    Most recently, on January 31, 2023, Molina sent a demand for return or payment to Defendants, demand a resolution by February 10, 2023.  A true and correct copy of the January 31, 2023, letter is attached hereto as **Exhibit B.**

22.    On February 10, 2023, Mr. Holdo responded by email acknowledging breach of the Consignment Agreement but failing to either remit payment and/or return the Eggs. A true and correct copy of the February 10th email is attached hereto as **Exhibit C.**

23.    Mr. Holdo's February 10, 2023, email to Molina, which acknowledged breach of the Consignment Agreement, was sent from LA Gems – Private Jeweler Inc. a California Corporation.

24.    Upon information and belief, at other relevant times Mr. Holdo used LA Gems – Private Jewelers Inc. to conduct business and make representations to Molina concerning the Eggs.

25.    To date, and despite repeated demand, Defendants have failed to return the Eggs and/or remit payment to Molina.

## **FIRST CAUSE OF ACTION - BREACH OF CONTRACT**
## **(ALL DEFENDANTS)**

26.    Molina repeats and realleges the allegations contained in all prior paragraphs as if set forth fully herein.

27.    The Consignment Agreement, entered into by the parties on April 27, 2022, is a valid and enforceable contract between the parties.

28.    Molina complied with its duties and obligations under the Consignment Agreement and shipped the Eggs to Defendants as set forth above.

29.    Defendants on the other hand did not fulfill their obligations under the Consignment Agreement.  Defendants breached the Consignment Agreement when they failed to: 1) furnish Molina with proof of delivery of the Eggs; 2) furnish Molina with proof of insurance on the Eggs; 3) refuse and/or fail to return the Eggs upon Molina's demand; and

4) refuse and/or fail to remit payment to Molina for the Eggs despite Molina's demand for same.

30.    Defendants have also failed to provide any proof that the Eggs, which belong to Molina, are actually still in Defendants' possession and haven't been sold or otherwise disposed of in violation of the Consignment Agreement.

31.    By reason of the foregoing, Molina is entitled to an order directing Defendants return of the Eggs and/or, an award of damages in an amount to be proven at trial, but of no less than $175,000, plus interest thereon.

32.    Molina is also entitled to its attorneys' fees and costs pursuant to the terms set forth in the Consignment Agreement.

## SECOND CAUSE OF ACTION - CONVERSION
## (ALL DEFENDANTS)

33.    Molina repeats and realleges the allegations contained in all prior paragraphs as if set forth fully herein.

34.    As set forth above and pursuant to the Consignment Agreement, the Eggs are the sole property of Molina, who has right to demand return of them at any time and for any reason.

35.    Despite repeated demand, Defendants have failed and/or otherwise refused to return the Eggs to Molina.

36.    Defendants' conduct is inconsistent with Molina's rights as the owner of the Eggs.

37.    Defendants have also failed to provide proof of delivery and/or insurance immediately after delivery of the eggs, and to date, have failed to provide any proof that the Eggs, which belong to Molina, are actually still in Defendants' possession and haven't been sold or otherwise disposed of in violation of Molina's rights to its property.

38.    As a result of Defendants' conduct as described herein, Molina has been damaged in an amount to be proved at trial, but of no less than $175,000.

5

39.     Molina is also entitled to its attorneys' fees and costs pursuant to the terms set forth in the Consignment Agreement.

## THIRD CAUSE OF ACTION – INTENTIONAL MISREPRESENTATION
## (ALL DEFENDANTS)

40.     Molina repeats and realleges the allegations contained in all prior paragraphs as if set forth fully herein.

41.     Mr. Holdo, on behalf of Defendants, made several misrepresentations to Molina to induce Molina into entering the Consignment Agreement.

42.     Specifically, Mr. Holdo, on behalf of Defendants, agreed that Mimi et Cie was solvent at the time of the Consignment Agreement, that the Eggs would be immediately returned upon demand to Molina as the true and only owner of the Eggs and that in the event the Eggs were not returned upon demand, Defendants would compensate Molina for the eggs in the amount set forth in the Consignment Agreement.

43.     Defendants failed to provide proof of delivery and/or insurance immediately after delivery of the eggs and to date, have failed to provide any proof that the Eggs, which belong to Molina, are actually still in Defendants' possession and haven't been sold or otherwise disposed of in violation of the Consignment Agreement.

44.     Upon information and belief and based on the information set forth in Mr. Holdo's email, Defendants are insolvent and were so at the time of their entry into the Consignment Agreement.

45.     Defendants were aware of the falsity of their representations at the time they were made.

46.     Molina was not aware and could not have been aware of the falsity of Defendants representations and therefore, rightfully relied on the truth of those representations to its detriment.

47.     The misrepresentations were material to Molina and Molina would not have entered into the Consignment Agreement, but for, Defendants' misrepresentations and false assurances.

48.    As a result of Defendants' conduct as described herein, Molina has been damaged in an amount to be proved at trial, but of no less than $175,000.

49.    Molina is also to its attorneys' fees and costs pursuant to the terms set forth in the Consignment Agreement.

## FOURTH CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION
## (ALL DEFENDANTS)

50.    Molina repeats and realleges the allegations contained in all prior paragraphs as if set forth fully herein.

51.    Mr. Holdo, on behalf of Defendants, made several misrepresentations to Molina to induce Molina into entering the Consignment Agreement.

52.    Specifically, Mr. Holdo, on behalf of Defendants, agreed that Mimi et Cie was solvent at the time of the agreement, that the Eggs would be immediately returned upon demand to Molina as the true and only owner of the Eggs and that in the event the Eggs were not returned upon demand, Defendants would compensate Molina for the eggs in the amount set forth in the Consignment Agreement.

53.    Defendants failed to provide proof of delivery and/or insurance immediately after delivery of the eggs and to date, have failed to provide any proof that the Eggs, which belong to Molina, are actually still in Defendants' possession and haven't been sold or otherwise disposed of in violation of the Consignment Agreement.

54.    Upon information and belief and based on the information set forth in Mr. Holdo's email, Defendants are insolvent and were so at the time of their entry into the Consignment Agreement.

55.    Defendants were aware or should have been aware of the falsity of their representations at the time they were made.

56.    Molina was not aware and could not have been aware of the falsity of Defendants representations and therefore rightfully relied on the truth of those representations to its detriment.

7

57.    The misrepresentations were material to Molina and Molina would not have entered into the agreement, but for, Defendants' misrepresentations and false assurances.

58.    As a result of Defendants' conduct as described herein, Molina has been damaged in an amount to be proved at trial, but of no less than $175,000.

59.    Molina is also entitled to its attorneys' fees and costs pursuant to the terms set forth in the Consignment Agreement.

<b><u>FIFTH CAUSE OF ACTION – UNJUST ENRICHMENT</u></b>
<b><u>(ALL DEFENDANTS)</u></b>

60.    Molina repeats and realleges the allegations contained in all prior paragraphs as if set forth fully herein.

61.    By reason of their foregoing conduct—including fraudulently inducing Molina to enter into the Consignment Agreement, breaching the Consignment Agreement deliberately, and failing and refusing to honor its legal and contractual obligations to return the Eggs to Molina—the Defendants have profited and enriched themselves unjustly at the expense and to the detriment of Molina.

62.    Additionally, to date, and despite demand for same, the Eggs have never been returned to Molina.  Accordingly, it is believed that Defendants may have improperly and illegally sold the eggs in violation of the Consignment Agreement and the true owner's, Molina's, rights.

63.    Defendants should not be permitted, in equity and good conscience, to retain for itself the Eggs and/or the monies that rightfully belong to Molina.

64.    As a result of Defendants' conduct as described herein, Molina has been damaged in an amount to be proved at trial, but of no less than $175,000.

65.    Molina is also entitled to its attorneys' fees and costs pursuant to the terms set forth in the Consignment Agreement.

WHEREFORE, Molina demands judgment as follows against all Defendants:

a.    Money damages in an amount to be proven at trial, but of no less than $175,000.00;

b.    Immediate return of the Eggs, plus damages, in an amount to be proved at trial;

8

c. Attorney's fees' and costs pursuant to the Consignment Agreement and to the extent allowed by law;

d. For all further relief, legal and equitable, that the court deems appropriate.

DATED this 10th of May, 2023.

KOELLER, NEBEKER, CARLSON & HALUCK, LLP

By:    */s/ Joshua Offenhartz*
            Joshua Offenhartz
            Kiri T. Semerdjian
            *Attorneys for Plaintiff*

**ORIGINAL** of the foregoing E-Filed
Via Electronic Filing this 10th day of
May, 2023.

By:    */s/ Silvia Miranda*