**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Molina Incorporated,<br><br>                    Plaintiff,<br><br>v.<br><br>Mimi et Cie, LLC, et al.,<br><br>                    Defendants. | No. CV-23-00813-PHX-MTL<br><br>**ORDER** |

Pursuant to Federal Rule of Civil Procedure 55(b)(2), Plaintiff Molina Incorporated ("Molina") moves for default judgment against Mimi et Cie, LLC ("Mimi"), Nelson Holdo ("Mr. Holdo"), and Meshell Sohl ("Mrs. Sohl-Holdo"). (Doc. 24.) Mimi, Mr. Holdo, and Mrs. Sohl-Holdo are collectively referred to as "Defendants." Defendants have not appeared or filed any responses. For the reasons discussed below, the Court does not have personal jurisdiction over the Defendants. The motion for default judgment is denied and the case will be dismissed.[1]

**I.     BACKGROUND**

Around April 27, 2022, Mr. Holdo signed a consignment agreement ("Consignment Agreement") on behalf of Mimi with Molina. (Doc. 1 ¶ 8.) In the Consignment Agreement, Molina consigned six luxury, collectible eggs (the "Eggs") valued at $175,000 to Mimi. (*Id.* ¶¶ 8, 10-11.) Molina alleges that on April 27, 2022, it shipped the Eggs to Defendants

---

[1] Faith Helgesen, a third-year law student at the Sandra Day O'Connor College of Law at Arizona State University, assisted in drafting this Order.

via Brinks armored security. (*Id.* ¶ 13.) But according to Molina, it never received proof of delivery because Defendants failed to include Molina as an authorized user on the delivery account. (*Id.* ¶ 14.) Further, Defendants allegedly failed to provide proof of insurance for the Eggs. (*Id.* ¶ 16.)

As a result, Molina repeatedly demanded that Mimi immediately return the Eggs or pay $175,000 pursuant to the Consignment Agreement. (*Id.* ¶ 20; Doc. 1-3 at 2.) In response, Mr. Holdo sent Molina an email on February 10, 2023, where he acknowledged owing Molina $175,000. (Doc. 1-4 at 2.) Molina alleges the email proves that Mr. Holdo breached the Consignment Agreement. (Doc. 1 ¶ 22-23.)

To date, Molina alleges that Defendants have failed to return the Eggs or remit payment. (*Id.* ¶ 25.) Thus, on May 10, 2023, Molina filed a Complaint asserting: (1) breach of contract, (2) conversion, (3) intentional misrepresentation, (4) negligent misrepresentation, and (5) unjust enrichment. (*Id.* ¶¶ 26-65.) All Defendants were timely served with the summons and complaint (Docs. 5, 7-9.) But Defendants have not responded.

Because the Clerk of Court previously entered default against Defendants (Doc. 19), the Court takes the Complaint's factual allegations as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

## II. LEGAL STANDARD

Once default is entered, the district court has authority to grant default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) (explaining that Federal Rule of Civil Procedure 55 requires a two-step process: an entry of default judgment must be preceded by an entry of default by the Clerk of the Court). The following factors are to be considered when deciding whether default judgment is appropriate:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72.

As the party seeking default judgment, Molina "bears the burden of demonstrating to the Court that the complaint is sufficient on its face and that the *Eitel* factors weigh in favor of granting default judgment." *Norris v. Shenzhen IVPS Tech. Co.*, No. CV-20-01212-PHX-DWL, 2021 WL 4844116, at *5 (D. Ariz. Oct. 18, 2021).

### III. JURISDICTION

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli v. Republic of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999). "[I]n the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Additionally, "if a plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

#### A. Subject Matter Jurisdiction

Plaintiff asserts the Court has diversity jurisdiction. (Doc. 1 ¶ 1.) Diversity jurisdiction requires complete diversity of the parties and an amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332. Federal Rule of Civil Procedure 8(a)(1) requires a federal plaintiff to include "a short and plain statement of the grounds for the court's jurisdiction" in their complaint because "[a] party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).

Here, Molina resides in Maricopa County, Arizona; Mimi is a California limited

liability company; Mrs. Sohl-Holdo and Mr. Holdo reside in Pasadena, California; and LA Gems is a California corporation. (Doc. 1 ¶¶ 3-7.) Accordingly, diversity of citizenship exists in this case.

Plaintiff also asserts that the amount in dispute exceeds $75,000 because it seeks to recoup at least $175,000 from Defendants. (*Id.* ¶ 64.)

Therefore, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.

### B.     Personal Jurisdiction

"The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). Here, Plaintiffs filed an application for default (Doc. 18), a motion for default judgment (Doc. 21), and a renewed motion for default judgment (Doc. 24). Molina had multiple opportunities to raise arguments regarding personal jurisdiction but failed to do so for any of the Defendants; therefore, the Court's analysis is warranted.[2] *Cf. In re Tuli*, 172 F.3d at 712 (finding that the district court failed to give the plaintiff an opportunity to raise jurisdictional arguments because the plaintiff filed an application for default, but no motion for default judgment).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). Arizona's long-arm statute conforms with the requirements of federal due process. Ariz. R. Civ. P. 4.2(a). Therefore, the analysis of personal jurisdiction under Arizona law and federal due process is the same. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004).

For the exercise of personal jurisdiction to comport with federal due process, Defendants must have certain "minimum contacts" with Arizona so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id.* at

---

[2] "To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter judgment in the first place." *In re Tuli*, 172 F.3d at 712.

- 4 -

801 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Supreme Court has recognized two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017).

### 1. General Jurisdiction

A court has general personal jurisdiction—jurisdiction over "any and all claims"—when a defendant is essentially at home in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co.*, 326 U.S. at 317). Federal courts may only exercise personal jurisdiction if the defendant has "certain minimum contacts" such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co.*, 326 U.S. at 316. "This is an exacting standard . . . because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F. 3d at 801.

#### i. Mimi

General jurisdiction over a corporation exists only when the corporation's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." *Daimler AG*, 571 U.S. at 127 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction includes a company's place of incorporation and principal place of business. *Id.* at 137. General jurisdiction beyond these locations may be demonstrated only in exceptional cases.[3] *Id.* at 139 n.19.

There are insufficient facts for the Court to find general jurisdiction over Mimi. Molina alleges that Mimi is a California limited liability company with its principal place

---

[3] The Supreme Court recognizes general jurisdiction over a corporate defendant who is registered to conduct business in the forum state in cases where state law explicitly permits registration as a basis for general jurisdiction. *Mallory v. Norfolk Southern Ry.*, 600 U.S. 122, 134-36, 143 (2023). Since Plaintiffs have not alleged that Mimi is registered in Arizona, the Court does not analyze this exception to general jurisdiction over a corporation that is not incorporated or has its principal place of business in the forum state.

of business in Pasadena, California. (Doc. 1 ¶ 3.) But Molina provides no evidence regarding the nature of Mimi's contacts with the District of Arizona. Instead, Molina merely alleges that Mimi entered into a Consignment Agreement for the consignment of Molina's Eggs and does not state where the parties signed the contract. (*Id.* ¶ 8.) Thus, there is insufficient evidence that Mimi engages in "continuous and systematic general business contacts that approximate physical presence in the forum state." *Schwarzenegger*, 347 F.3d at 801.

### ii. Mr. Holdo and Mrs. Sohl-Holdo

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." *Goodyear Dunlop Tires Operations*, 564 U.S. at 924.

Molina alleges that Mr. Holdo and Mrs. Sohl-Holdo are residents of California. (Doc. 1 ¶ 6.) And Molina provides no further evidence to establish that Mr. Holdo or Mrs. Sohl-Holdo are domiciled in Arizona. Thus, the Court does not have general jurisdiction over Mr. Holdo or Mrs. Sohl-Holdo.

### iii. LA Gems

Molina failed to include Defendant LA Gems Private Jewelers Inc. in its request for default judgment. (Doc. 24 at 1:21-25; 8:11-14.) Nevertheless, the Court will conduct a personal jurisdiction analysis over LA Gems. *See In re Tuli*, 172 F.3d at 712 (stating that "when a court is considering whether to enter a default judgment, it may dismiss an action sua sponte for lack of personal jurisdiction").

Here, Molina alleges that LA Gems is a California corporation with its principal place of business in Newport Beach, California. (Doc. 1 ¶ 6.) Molina fails to allege other facts to demonstrate that LA Gems engages in a "consistent and substantial pattern of business relations" or has other "substantial contacts" with Arizona. *Theo. H. Davies & Co. v. Republic of the Marshall Islands*, 174 F.3d 969, 975 (9th Cir. 1998). Thus, the Court does not have general jurisdiction over LA Gems.

### 2. Specific Personal Jurisdiction

Specific personal jurisdiction—limited to a narrower class of claims than general

personal jurisdiction—exists when the defendant has taken "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The Ninth Circuit uses a three-prong test to analyze specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023) (citing *Schwarzenegger*, 374 F.3d at 802).

"The plaintiff has the burden of proving the first two prongs." *Id.* (citing *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011)). If one of the first two prongs is not met, the inquiry ends there, and the Court does not have personal jurisdiction over the defendant. *See id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

To analyze the first prong, the Ninth Circuit recognizes separate inquiries that depend on whether the nature of the claims at issue arise from a contract or alleged tortious conduct. *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). Because the claims arise from an alleged breach of contract (Doc. 1 ¶¶ 27, 34, 41, 51, 61), the Court will conduct the purposeful availment inquiry.

### i. Mimi

A defendant purposefully avails itself to the forum state when it has deliberately "engaged in significant activities within a State or has created continuing obligations

between himself and residents of the forum." *Morrill*, 873 F.3d at 1149 (quoting *Burger King Corp.*, 471 at 475). A contract alone is insufficient to create jurisdiction over an out-of-state party. *Burger King Corp.*, 471 U.S. at 478. "Rather, there must be 'actions by the defendant *himself* that create a substantial connection with the forum state.'" *Picot*, 780 F.3d at 1212 (quoting *Burger King Corp.*, 471 U.S. at 475) (emphasis in original). Indeed, a defendant must have "performed some type of affirmative conduct which allows or promotes the transaction of a business within the forum state." *Id.* (quoting *Sher*, 911 F.2d at 1362). And to determine whether such conduct exists, courts consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* (quoting *Burger King*, 471 U.S. at 479).

Under this standard, Molina failed to demonstrate that Mimi had sufficient minimum contacts with Arizona. For example, Molina does not allege that Mimi advertises or targets its business to Arizona residents, nor does Molina allege that Mimi conducts its business operations in Arizona. Molina also fails to allege who initiated the transaction.

Further, the lone transaction for the consignment of one item does not establish that Mimi availed itself of the privilege of doing business in Arizona. *See Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008). In *Boschetto*, the court reasoned that a contract for the sale of a good is insufficient to create a substantial connection with the forum state. *Id.* There, the contract involved the lone sale of a car from eBay from Wisconsin to California. *Id.* The plaintiffs failed to demonstrate any continuing commitments assumed by the defendants under the contract, and the contract did not require the defendants to perform substantial business in Arizona. *Id.*

Similarly, the contract here is for a single transaction: the consignment of Molina's Eggs, involving the transfer of the Eggs from Arizona to California. (Doc. 1-2 at 2.) Once Mimi sells the Eggs on consignment, it has no other ongoing obligations other than to remit payment to Molina. (*Id.*) Like the plaintiff in *Boschetto*, Molina failed to allege that the Consignment Agreement is anything more than a one-off transaction. Such an agreement is insufficient to subject Mimi to personal jurisdiction because this "was a one-time

contract for the [consignment] of a good that involved the forum state only because that is where the [consignor] happened to reside, but otherwise created no substantial connection or ongoing obligations there." *Id.* at 1019 (cleaned up).

Finally, although there is a choice of law provision in the Consignment Agreement, this alone is insufficient to confer personal jurisdiction over Mimi.[4] *Cf. Burger King*, 471 U.S. at 482 (finding that the choice of law provisions combined with a 20-year interdependent relationship was sufficient to subject the defendant to the forum state's jurisdiction). Here, there is no decades long business relationship between the parties, and it appears Mimi anticipated to fulfill its contractual duties in California, where it had its principal place of business. (Doc. 1 ¶ 4.) Thus, the Court does not have specific jurisdiction over Mimi. *See Boschetto*, 539 F.3d at 1016 (recognizing that when the first prong of the Ninth Circuit's specific jurisdiction test is not satisfied, the jurisdictional inquiry ends there).

### ii. Mr. Holdo and Mrs. Sohl-Holdo

A non-resident defendant is subject to specific personal jurisdiction only for claims arising out of the defendant's activity in the forum state. *Schwarzenegger*, 374 F.3d at 802. This analysis "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp.*, 471 U.S. at 475 (citations omitted). A contract with a forum resident alone does not constitute sufficient minimum contacts to establish purposeful availment. *Id.* at 478. For the following reasons, the Court does not have specific personal jurisdiction over Mr. Holdo or Mrs. Sohl-Holdo.

First, Molina alleges that Mr. Holdo and Mrs. Sohl-Holdo are the sole principals and owners of Mimi. (Doc. 1 ¶ 7.) This alone it does not demonstrate that they purposefully availed themselves to the privilege of conducting business in Arizona. In fact, although Mr. Holdo and Mrs. Sohl-Holdo allegedly own Mimi, the Ninth Circuit has consistently

---

[4] The choice of law provision states, "[t]his instrument shall be governed and construed in accordance with the laws of the State of Arizona . . . ." (Doc 1-2 at 2.)

cautioned against conflating liability standards with personal jurisdiction. *Am. Tel. & Tel. Co. v. Bruxelles Lambert*, 94 F.3d 586, 590-91 (9th Cir. 1996) (stating that liability should not be conflated with amenability to a suit in a particular forum); *Sher*, 911 F.2d at 1365 (noting that liability and jurisdiction are independent). Their ownership interest also does not create an ongoing obligation in Arizona. And Molina has not alleged that either Mr. Holdo or Mrs. Sohl-Holdo conduct business in Arizona, regularly visit Arizona, or otherwise purposefully avail themselves to Arizona.

Second, the Consignment Agreement with Mr. Holdo's signature on behalf of Mimi is insufficient to confer personal jurisdiction over him. *Boschetto*, 539 F.3d at 1017 (finding that a contract for the sale of a good in insufficient to create a substantial connection with the forum state and did not create any ongoing obligations with the forum state).

Finally, Mr. Holdo's email to Molina is insufficient to constitute purposeful availment. *See Perzow v. Hogeg*, 826 Fed. Appx. 615, 616-17 (9th Cir. 2020) (citing *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir 1985) ("[U]se of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state")). Indeed, communications alone do not create personal jurisdiction unless they create substantial connection with the forum. *See Picot*, 780 F.3d at 1213. Because Molina failed to establish that Mr. Holdo or Mrs. Sohl-Holdo created a substantial connection with Arizona, Molina failed to meet the first prong of the Ninth Circuit's jurisdictional inquiry.

### iii. LA Gems

LA Gems is a California corporation and is not a party to the Consignment Agreement. (Docs. 1 ¶ 5; 1-2 at 2.) Molina does not provide sufficient information to demonstrate that LA Gems performed affirmative conduct that "allows or promotes the transaction of a business" within Arizona. *Picot*, 780 F.3d at 1212. Rather, Molina only presents one email from Mr. Holdo that is sent from his account with LA Gems. (Doc. 1-4 at 2). But as previously noted, communications do not constitute purposeful activity that would invoke the jurisdiction of the forum state. *Peterson*, 771 F.2d at 1262. And courts

do not conflate liability with personal jurisdiction. *Am. Tel. & Tel. Co.*, 94 F.3d at 591. Thus, Molina failed to establish that the Court has specific personal jurisdiction over LA Gems.

Because the Court does not have personal jurisdiction over Mimi, Mr. Holdo, Mrs. Sohl-Holdo, or LA Gems, it cannot enter default judgment under Rule 55. *See Veeck v. Commodity Enters., Inc.*, 487 F.2d 423, 426 (9th Cir. 1973) (finding that the district court's lack of personal jurisdiction rendered its default judgment void); *In re Tuli*, 172 F.3d at 712 ("[W]hen a court is considering whether to enter a default judgment, it may dismiss an action sua sponte for lack of personal jurisdiction.").

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff Molina's Motion for Default Judgment Against Defendants (Doc. 24) is **denied**.

**IT IS FURTHER ORDERED** that the Clerk's entry of default against Mimi, Mr. Holdo, Mrs. Sohl-Holdo, and LA Gems is **set aside**. (Doc. 19.)

**IT IS FINALLY ORDERED** that the Clerk of the Court shall **dismiss** this case without prejudice for lack of personal jurisdiction and **close this case**.

Dated this 10th day of September, 2024.

Michael T. Liburdi
United States District Judge